Page 14-2385, John Quirke v. Private Residences at Ontario Place Morning. Councils would please approach the podium and identify yourselves and the party you are representing. First I have for the appellant, John J. Quirke. Good morning, Rebecca Rothman on behalf of the appellate. Good morning and thank you for your patience. We will have about 5-15 minutes apiece and time for rebuttal? Four minutes. Four minutes? Okay. Excuse me. Council, could you state your name again? I didn't hear it. Chris Hack. Okay. Mr. Hack. All right. Thank you. All right. You may proceed. May it please the court. Counsel. John Quirke was charged with multiple excessive assessment late fees on his parking spot and his condo. Assessments were charged on a single bill. The late fees were charged separately. He was charged a $75 late fee on a $300 condo assessment and another $75 late fee on a $50 parking spot assessment. You know, I think the issue in this case is whether we have jurisdiction or not. I think your case hinges on your motion to amend your complaint that that would toll the staff's limitations. Our post-trial motion was substantively a motion for reconsideration. That motion sought relief for us to proceed with our client's alleged claims. Okay. Was it labeled reconsideration? It was styled a motion for relief to file an amended complaint. Substantively, it was directed towards a 619 with prejudice dismissal. The only way to – Was that prayer for relief in that motion indicated that it was a motion to reconsider? The prayer for relief said – asked, quote, for us to proceed with our alleged claims. The only way to grant that motion would be to vacate or modify the 619 with prejudice dismissal. So the prayer for relief indicated you wanted to amend the previous plea, correct? In order for us to reopen the case and pursue our claims. Under Keenberg, a one-sentence motion for reconsideration is sufficient. Wait, wait, wait. Sure. A motion to reconsider. Now, you want us to write that a motion to amend a complaint is a motion to reconsider. Is that what you want us to say? This court already has written that, basically. We have said that? In what case? In Geiser v. Everest, there was a motion to amend, but it subsequently sought to vacate the underlying order. It was filed as a motion to amend. The Second Circuit has ruled that, you know, similarly, it's the substance of the motion that matters. But the substance of your motion doesn't ever say or even use any of those words, reconsider, rehear, modify, anything. But the effect of bringing that motion would have been to modify that underlying judgment. There's no way to grant that motion without vacating or modifying the 619 judgment. Well, the 619 dismissed the case based on affirmative matter, grace judicata. Correct. You don't say in here anything about how the court erred in concluding that the complaint was dismissed improperly on grounds of grace judicata. You don't attack that in any way? Well, we're asking the court to reopen the case. Well, you asked for leave to amend. Right. And the way that that case was dismissed, based on 619, was grace judicata. There are cases out there that pretty much say if all you do is ask leave to amend, that that is not a motion attacking the judgment. Now, should we just say that no longer? There are cases saying if you subsequently, if you file a motion for leave to amend, but you also ask for relief that would necessarily result in modifying or vacating the judgment, that's sufficient. Yes, that's correct. So I have the motion in front of me. Direct me to the language where you suggest that. I believe it's the last sentence where you ask the court to allow this clause to continue. All right. Allow this clause to continue. Where does the word continue? Oh, sorry. To allow plaintiffs to proceed with his alleged claims. Okay. And the only way you could do that is by vacating and modifying the width budget of the 619 dismissal. So how is the trial court notified or informed that what you really were seeking is to have the trial court reconsider its decision? By that language that asks him, asks the trial court, to allow us to proceed with our claims. See, what you're asking us to do is, the way the rules are set up, you know, you say allow plaintiff to proceed with their alleged claim. So you want us to write that when you say allow plaintiff to proceed with alleged claim, that that is, in effect, the same thing as a motion to reconsider. That's what you want us to write. If it has the same effect of being, regardless of how it's styled, if it has the same effect of asking the court to rehear, modify, reconsider, and subsequently it's good enough under the rules which don't require specific content, it could be one sentence, and we think that is sufficient. I guess what we're getting at is how would the court and the opposing parties know that the argument that was being presented was, in fact, that you wanted the trial court to reconsider the previous decision. Because the only previous decision was granted with prejudice only as 619, the registry to conduct. So by attacking that judgment and asking him to reopen the case, we're necessarily addressing the registry to conduct. What arguments do you assert in the motion that show the trial court that it may have possibly committed an error? We don't directly address the registry to conduct. We're not required to under Kingbrook. Kingbrook says you don't need to have any arguments, any case law, anything. It just says you need to ask for reconsideration. You need to ask for an order that would result in rehearing, retrial, modification, or other relief. Other relief has to be that kind of same relief. Similar to modification or vacation judgment. Now, you're saying today that this dismissal of the 2615 was without prejudice? It wasn't a final order? No, yes. The order dismissed 619 with prejudice. Before that, what does it say? The complaint is dismissed under 215, and the complaint is dismissed under 2619 with prejudice. And the only way we can read it is that. That's not how the case is read. If there's nothing in there that says with or without prejudice, under our rules, it's an involuntary dismissal, and it's final. It's a judgment on the merits. Then in any event, our post for our motion is directed at the judgment. It's undisputed that there was a final judgment on 619. Our motion is directed at that final judgment. Well, but again, we're having a concern here about you don't really say anywhere in your motion that the court made an error when it dismissed your case under 2619. Can you have two dismissals of the complaint? Wasn't it dismissed on the date that the 2619 was entered? The 2619 is the final. It was dismissed with judgment, and he ruled that that ratio to cut apart the entire complaint as a matter of law, and it's dismissed with prejudice. Yes. And under Kingsbrook, we don't need to provide any content attacking that judgment. We just need to direct a motion, a post for our motion at that judgment. It's kind of a pretty broad reading. Don't you have to indicate how it's being directed? In this way, there's no other way to look at it than that there was one final judgment, and we asked the court to reopen this case and allow our plaintiff to pursue his claims. At that point, he had been barred from pursuing his claims. We asked the court to reopen and let him pursue his claims, and it's directed at that judgment. Well, do you suggest also that this wasn't a final order when the court dismissed your complaint under 2615? We wrote that as a dismissal without prejudice. The final order was the ratio to cut a 619 order, and we directed a motion to that. Don't the cases say that when the court dismisses a complaint under 2615, it's the plaintiff's burden to persuade the trial judge to specify that a dismissal is without prejudice or that the plaintiff will be permitted to re-plead if he wishes or she wishes to plead over? That's Donovan v. Caledrino. When a plaintiff fails to do either, Supreme Court Rules 273 dictates the effect of the order. Unless the order of dismissal or a statute of this state otherwise specifies an involuntary dismissal of an action, which this was, other than a dismissal for lack of jurisdiction for improper venue or for failure to join an indispensable party, operates as an adjudication of the merit, non-merits. So I think this dismissal was with prejudice. I mean, if he had allowed us to pursue our claims and modify the 619 motion, he would have allowed us to amend the complaint to address the 615 matter. So what you're suggesting here is that if a party outside of this case gets a ruling against them and they seek the court to reconsider the ruling, the party here doesn't have to fashion the motion with the caption or anywhere in the body of it as to what the party is seeking the court to reconsider? That's correct. The caption of the motion just doesn't matter. Well, what about the prayer for relief? The prayer for relief is really what matters. And our prayer for relief necessarily asks the court to reopen the case. They focused on Shookus v. Ford, and that was a motion that was styled, and part of the motion was a motion for modification of judgment, which is what you need under the rules. Subsequently, the motion asked for nothing more than to leave to amend the complaint. Isn't that what yours did? Subsequently, it asked for nothing more than leave to amend. No, we asked the plaintiff to allow, proceed with his alleged claim. So it's really the opposite of Shookus. We don't have the title, but subsequently we have enough under Kingbrook for a post-judgment motion. How does the trial court know what claim you're referring to? Because you're asking to amend, so it could be the new pleading, whatever it may be. There's no reference to the prior ruling or the prior pleading? In that case, it was a 619 res judicata issue that borrowed us from court. We're asking to reopen the case and allow them to proceed with their case. It necessarily was directed towards a 619 res judicata issue. On the res judicata issue, our plaintiff could not have brought this case anywhere but this court. And why is that? He was barred from bringing it in the forced voluntary procedure because it wasn't germane to possession. Why wasn't it germane? Because this involves the excessiveness of the late fees. So even if he had been allowed to bring those claims. Weren't the excessiveness of the fees, just the fees in general, at issue there? The late fees. Yes. And how could you say it's not germane that he's saying they were excessive? Because if he had been allowed to bring those claims in the forced voluntary suit and if he had won, he still would have not been entitled to possession because he stopped paying his assessments. So they would have still been entitled to possession even if he won in the late fee case. There's really only four things that can be germane to possession and none of them apply here. What are they? The first one is whether you're asserting a pyramid right for possession, which he's not. Claims denying breach of the agreement for any possession. Claims questioning the validity or enforceability. He posted in that one? No, there's no denying breach of the agreement. What did the trial court conclude when he said all of these claims were barred by breach of the agreement? He based the decision on Spanish court and he said that basically that our client was arguing that his assessments and the late fees weren't due, that his assessments weren't due. Because? Because he felt the late fees were too high. Right, so they were excessive. And that's not germane at all? That's not germane because you're not under Spanish court. That's not a legally viable defense. The assessments are due or they're not due. What was the defense in Spanish court? That they weren't maintaining the hallways or the common areas? That her toilet was not being fixed. She said, well, if that's the case, I'm not paying my assessments. My assessments aren't due because you haven't fixed my toilet. And he said here my assessments aren't due because they're excessive. Right. Okay. That's not a legally viable defense. It's not legally viable. It's not germane possession and it can't be raised in the forcible entry suit. Okay. We can affirm on any basis, correct? Correct. What about the nullification? Whether this was a nullification defense? It would be. Wouldn't your suit nullify everything that occurred? No, because the? All those fees that were paid, they'd be disgorged, wouldn't they? Aren't you nullifying everything that took place? It would depend how. Seeking to nullify everything? The forcible entry suits are purely possessory. So possession has been taken care of. The association got possession. We've never contested possession. So any order we get in this case would not nullify the fact that the association took possession of the unit, rented it out, got their money back. That's over. And in terms of whether it nullifies any, you know, if money has to change hands, we can only point to Settles v. Volvo, which the Supreme Court says. I'm just curious. Is it too late for you to name another plaintiff? Probably not. I'm just curious. Settles v. Volvo simply says that if you're not allowed to raise a claim in the forcible entry suit, then President Ducato can't bar you raising that claim later. And I think that would override any sort of, you know, whether it was nullification, some of these fees have to come back. If he's not allowed to raise, you know, if he can't raise these issues in the first suit, he's not barred from raising them now. You know, just going back briefly to the jurisdiction issue, there is a Supreme Court case that's cited in the, well, in many of these cases, but it's also referred to in the Geisler case. But it's an Illinois Supreme Court case that says, you know, that a motion to amend is not a motion attacking the judge. It's Fultz v. Hogan, 49 Illinois Second. And Fultz is an older case, and that is still true, but it has to be 14. It is still true? I mean, is it still valid, that case? That's the case kind of that says if all you do is ask to leave to amend, you're out of the box. If that's all you do, if that's all you do subsequently, the subsequent rulings, the Supreme Court and this Court have said that if your subsequent motion is asking to modify or vacate or reopen the case, that's sufficient. Well, if you used one of those words, we wouldn't even have, we probably wouldn't be discussing this. But those words aren't anywhere in your motion, right? Those language, that particular, those four kind of key words are missing. And what was used in Kingsbrook? Kingsbrook, I believe, Kingsbrook was a one sentence. Right, but what did it say? I think that it just said we seek reconsideration. Yeah, so, okay. But, you know, the four things are rehearing, retrial, modification, or other relief. Yeah, and they did seek reconsideration in Kingsbrook. And we think, you know, asking us to proceed with our alleged claims is good enough for other relief because it would necessarily result in modification of the judgment. All right. All right. Thank you. Thank you. Good afternoon. Good afternoon. May it please the Court? I'll answer. If you don't mind, I'm going to start with a jurisdictional issue that I had written off after a motion to dismiss was denied. We always have an obligation to consider our jurisdiction. I appreciate that. The motion that was filed on June 20th was a garden variety motion for leave to amend the complaint. It was not a post-judgment motion that was directed at the judgment. And I think some of your questions reminded me of what happened when I got the motion itself. I got the motion and had to read it a couple times and was wondering what was going on. Now, isn't he asking to be able to proceed with his claims? Isn't that enough? I don't believe that's enough, no. Why not? I don't think that's enough at all. Shouldn't Kingsbrook pretty much take everything out of the game, so to speak? No. No? And I don't think this Court believed that either because of the way it ruled in that Shepkis case. Was that before or after? That was after. It was after Kingsbrook. It was after Kingsbrook. It was 2002. And your Shepkis case was in 2006. The Kingsbrook case basically said you don't have to add in a bunch of undefined specificity about what you're going to argue or what you're contesting the Court erred on. You just have to make it known that you want a do-over. And I would say in reading the motion for leave to file the amended complaint, that wasn't clear at all. That complaint, the motion itself does not touch upon the fact that the Court had dismissed for under res judicata grounds under 619. It completely ignores it. The amended complaint itself that was attached doesn't cure any of the deficiencies. It basically changed out the breach of contract claim for a deck action and addressed one or two issues. Well, one or two issues was addressed in the motion for leave. So I think under the way that the law stands, given Kingsbrook, given the Shepkis case, and given the Foltz case, which we cited, which was your Illinois Supreme Court case. Well, that was long before Kingsbrook, though. That was long before Kingsbrook, but Kingsbrook didn't involve the motion to amend. Kingsbrook involved a motion to reconsider. What about the Muirfield case? Doesn't that really kind of take it to – how would you distinguish that decision from this motion to amend? I'm trying to think. That's the 2nd District case where it was a motion to amend, but there was a little something extra, and the Court said that was enough. Well, I'd say in this case that little something extra, I would – had I remembered what that case said, the proof for relief that asked to proceed with the claims could likely be distinguished in that 2nd District case. A motion that substantively seeks only leave to amend, yet requests the relief that the matter be reinstated following a dismissal of prejudice is sufficiently directed against the judgment to qualify. I don't believe that the proof for relief in this case requested that the claims be reinstated. It ignored the dismissal with prejudice completely. Yes, that's true. It doesn't mention that anywhere. It didn't mention it either. 2619 is not in there. The 2619 is not mentioned at all. It doesn't, no. It says defendants moved to dismiss the complaint in its entirety, both pursuant to 615 and 619. And then seeks leave to amend this complaint. But it did dismiss it pursuant to 2619. And then it goes on to say – then it talks about the 2615. And it asks leave to amend to address the Court's order dismissing under 2615. And then it adds some allegations and then it says, Plaintiff respectfully requests that this Court grant his motion for leave to file a First Amendment last action complaint. And to proceed. And to proceed. I don't believe that the motion is directed at the judgment. Based on the Shutkis case, based on the Kingsbrook case, and based on the Fulkes case, and the Second District case that you refer to. Well, they did interpret a plaintiff's request to reinstate their cause to be a request to modify or vacate the trial court's judgment. Judgment of dismissal with prejudice. So as to allow. Well, we're not bound by this decision anyway. It was somewhat curbed by a later decision. I don't think that the Shutkis decision, which is your decision, is the better reason. Oh, I think it goes to the substance. Um, I don't have to. Well, Geisler also suggests, which was Justice Gordon's decision, that case also suggests that if the motion is at its essence a motion for leave to amend, then it's not a motion attacking the judgment. So the court considered whether that particular complaint in front of it was more than. Because I think the holding is still, I think it's still clear in Geisler that if it's just a motion to amend, you cannot equate that with any motion to it attacking the judgment. And there's a number of other cases that your Honor pointed out. We've cited in our brief that a motion for leave to amend is not a motion directed at the judgment. But Kingsbrook is pretty broad in its interpretation. I would agree with that. I think Kingsbrook, though, the issue there was the, you know, what degree of detail is required in a motion to reconsider a motion directed at the judgment. And the court did not want to specify, you have to say A, B, C. You have to, this is what you have to do. There clearly has to be a motion that, um, that raises one of the areas, you know, that requests some relief, such as a rehearing, retrial, modification of vacation. But aren't we supposed to interpret the rules liberally so that lawsuits can be decided on their merits? Yes. So how do you square that with dismissing this one or affirming it on lack of jurisdiction? Well, I think you could dismiss it on lack of jurisdiction, or you could affirm it on the merits. Well, what about the range of the cost? I think that is easy. It says that this isn't germane. The only issue germane to the proceedings was possession. Nothing more. And I think that is, um, that is a position that ignores the facts before, the facts in the record. Well, if you didn't owe the assessments, let's assume for purposes of a hypothetical, let's assume a condominium owner didn't owe any assessments. Is that germane then to the possession? They would still have right to possession, wouldn't they, if they didn't owe the assessments? If they didn't owe the assessments, they wouldn't have the right to possession, for possession. The association wouldn't have possession. They wouldn't have the right to possession if they're not owed. If they're not owed. Okay. Well, is this a claim where they're not owed? Or is he saying, no, I owed them, I just didn't owe the amount that they were suggesting I owed? Well, we don't know because he never responded at all. We don't know what his position was. I thought his position was that the fees were excessive. The late fees, the $75 for his assessment, he was being assessed $75 every time he did the maintenance assessment. Correct. And he had a garage, too, so he was being charged $150. And he just stopped making those payments, right? Then he stopped making any of the payments entirely. As an objection to the unlawful, exorbitant late fees, he stopped paying his assessments. Right. The association came in, they filed an inaction under the Forcible Entry Detainer Act. They specifically requested possession and a judgment that included all assessments. And assessments meaning assessment for common expenses, assessments for late fees, all of the above. They specifically requested in their complaint. The order that was entered specifically granted them that relief. Assessments. Assessments for the common expenses, assessments for the late fees. Did the association ever give him a hearing? I believe it did. But you're not sure? I'm not sure. As I stand here, I don't think that those facts are in the record. But given my knowledge of the way associations run, my guess is it would be. And if it didn't, that would be something that he could. Well, that isn't something that he could necessarily. I'm not sure. Apparently it wasn't part of this case. That wasn't part of this case. Do you think there's very many, what do they call their rules, these individual condo associations? Declarations, bylaws? Yes, bylaws. Do you think the bylaws provide for hearings when you don't make your assessments, when you don't pay your assessments? Well, it depends on, no, they don't. They allow the association to, the declarations will allow the association under the Forcible Detainer Act to file a suit for possession. Yeah. Okay. And so to jump ahead, the Forcible Detainer Statute allows a unit owner to challenge whether the assessments are due when owing. I mean, that's part of, yes, and that is part of the statute itself. It says when an action is based on the failure of an owner to pay when due, proportionate share of common expenses, and any other expenses lawfully agreed upon, or the amount of an unpaid fine, and the court finds that these expenses And any other amount of unpaid fine. Yes. Which is what these are, right? They were $75 fines or penalties for not paying the assessments. The VAD of their expenses, according to the association, would say their expenses lawfully agreed upon because they Oh, right, they're in the According to the declarations and the bylaws. But he stopped paying everything. He wasn't even paying his assessments. He said, he disputed it and said, I'm disputing it. I'm going to stop paying everything. The association files suit under the Forcible Detainer Act and doesn't raise anything. See, once a person buys a condominium, they rarely believe that they have to give up all of their rights. And the only rights that they have are in the bylaws or in the rules or in the condominium act itself. And it's very difficult for people to accept that. I know that. Doing this, I know that. But the issue is, is he didn't dispute them. I mean, they're germane. They go to the heart of the proceeding. They go to the heart of why the action was filed in the first place. What's germane? When you look at what's germane, you have to look at why the action was filed in the first place. What was the underlying action for? But why does Spanish court suggest that these were germane when it's actually dealing with something that's not germane? Why do you think Spanish court supports what the trial judge did here when it's really about what is not germane as opposed to what is germane? Well, Spanish court was very limited in its ruling. And it said, a nullification defense is a defense where it's almost like a contractual. The court looked at the contractual relationship versus the statutory relationship. And the plaintiff in Spanish court said, I'm not disputing that they might be assessed correctly, but I'm claiming that if you don't do A, you don't upkeep my common element, fix my john, fix, you know, paint my walls, I don't have a duty anymore to pay assessments. And that's an independent, that duty to maintain the common elements is independent from the unit owner's duty to pay assessments. And what's the gist of, what was the gist of Mr. Quirk's complaint? The gist of Mr. Quirk's complaint? In this case? Yes. Well, his complaint was, I'm not paying my assessments because I dispute that these are actually owed. And assessments is, I mean, counsel would like to parcel out the late fees and the common expenses. They're all assessments. They're all assessed to his account. And they were all the basis for this forcible entry detainer act. And so he said, I'm not paying them. And the account association said, fine, I'm going to get possession. And Mr. Quirk, he said, okay. And then wait and waited and waited. And two years later, came back and said, well, wait a second, those fees that you assessed, that you entered this judgment on, that the association was able to collect under the forcible detainer act, which is what it's there for, to move these things along, I'm disputing that. Those were exorbitant. They were unlawful. They never should have been granted. Yeah, but those fees here were $20,000 and this man's monthly assessment was only $335. And then he should have disputed them. Well, that was over a period of time that they added up, wasn't it? That was over a period of time that they added up. If you can't dispute the amount that you're being assessed and the claim is based on the assessments because you're not paying your assessments, then the result is absurd, like we indicated in our brief. That would mean that in any forcible entry detainer case, the association could come in and say, you know what? You owe me a million dollars. I'm going to put a million dollars on your books, and now I'm going to file a possession claim, and you can't dispute that. In fact, you can dispute it, but you've got to go to another court and dispute it later. That completely undermines the reason for the act itself. Did I misunderstand something the trial court said? Didn't he have a further ground regarding why the complaint should be dismissed? Because what he was asking to happen in the complaint was basically undo everything that had occurred. You're attacking me, which I guess I didn't explain well enough where I was going with saying that this is an absurd result. You're challenging this judgment that was entered and saying that's invalid. Those fees were invalid. They weren't lawfully due. You're wrong, Judge. He's seeking to undo the... So what principle of law is that that prohibits that? Well, that would be res judicata. That would be just in general fairness. But I'm confusing the nullification thing, then, I think. Whatever. I thought there was some other basis that the judge ruled besides res judicata that would... In our case, Judge Cohen? Yes. Yes, the trial judgment. Your primary argument is... Our primary argument is the res judicata. And there was another argument in Spanish court. That might be what you're thinking of. In Spanish court, they could validly challenge the assessments and whether they were due by challenging whether the assessments were properly voted on. Which is, you know, the case here is there's no question the fees are germane. And the validity of the fees are germane. The case law, the public policy, fairness, justice, the doctrine of res judicata, all support Judge Cohen's finding in this court should affirm. Thank you. Thank you. Mr. Powell? The absurd result that they're talking about is what they're asking for. They talk about a million-dollar late fee. But what if it was, instead of a $75 late fee, what if it was 75 cents? Under their reading of whether the assessments are due, that would allow any condo owner to come in and say, you know, that 75-cent late fee is too high. I want to litigate those fairness claims. I want to bring a four-count complaint in the forcible entry suit and hold that possession of this unit all the while I'm not paying assessments. The association is not getting its money. That's exactly what Spanish court says you can't do. There's no dispute that these assessments were due, the late fees were due, they were imposed. We're not talking about the validity of the agreement that imposed those late fees. This is just a fairness claim, and it's a reasonableness claim. That's a fact-based inquiry. That's exactly what Spanish court says you can't hold up the forcible entry proceedings with these types of fact inquiries. Thank you. Thank you. I want to thank counsels for a well-argued matter, and the court will take this under advisement, and the court is adjourned. Thank you.